**UNITED STATES, Appellee,**

v.

**Patrick B. McCARTHY, Electrician's Mate First Class, U.S. Navy, Appellant.**

No. 96–1393.
Crim.App. No. 95 0989.

U.S. Court of Appeals for the Armed Forces.

Argued May 13, 1997.

Decided Sept. 17, 1997.

Sullivan, J., filed concurring opinion.

Effron, J., filed opinion concurring in part and in the result.

For Appellant: *Lieutenant Syed N. Ahmad,* JAGC, USNR (argued); *Lieutenant James T. Mahoney,* JAGC, USNR (on brief).

For Appellee: *Major R.W. Koeneke,* USMC (argued); *Colonel Charles Wm. Dor-*

*man,* USMC and *Commander D.H. Myers,* JAGC, USN (on brief).

## Opinion of the Court

COX, Chief Judge:

Appellant was tried by a military-judge-alone general court-martial at the Naval Legal Service Office, Washington, D.C. In accordance with his pleas, he was convicted of failing to obey a military protective order (2 specifications), committing indecent acts with another, and committing indecent acts with a child—violations of Articles 92 and 134, Uniform Code of Military Justice, 10 USC §§ 892 and 934, respectively. The judge sentenced appellant to a dishonorable discharge, 8 years' confinement, forfeiture of all pay, and reduction to E–1. Pursuant to a pretrial agreement, the convening authority approved the sentence, but suspended confinement in excess of 5 years for 5 years and, as a matter of clemency, suspended forfeitures in excess of $500.00 pay per month for 5 years. The Court of Criminal Appeals affirmed in an unpublished opinion dated July 25, 1996.

## FACTS

On October 3, 1991, while appellant was in his home watching a pornographic videotape and masturbating, his 3–year–old daughter entered the room and sat beside him. Appellant continued to masturbate and finally ejaculated, with some of the semen landing on his daughter's leg. This act was the basis for appellant's later conviction for committing an indecent act with a child under Article 134. Two days later, on October 5, appellant rubbed his penis between his daughter's legs and ejaculated on her stomach. This act later formed the basis of appellant's conviction for committing an indecent act with a child under Article 134. Eventually, the child reported the sexual contact to her mother (appellant's wife), who confronted appellant about the behavior. Appellant admitted to his wife and to authorities that the above-described contact had occurred.

As a result, appellant's command issued to him a military protective order on August 27,

1993, prohibiting appellant from having contact with his wife (other than by telephone) or with his children, and from going to the family residence. Appellant violated this order on August 30 and September 11, 1993, resulting in his conviction of two specifications under Article 92. On October 20, 1993, appellant was placed under restrictions requiring him to muster at 7:00 a.m. and 4:00 p.m. daily. On October 29, 1993, charges were preferred against appellant, consisting of violating the protective order (2 specifications); raping a child; sodomizing a child; and committing indecent acts with a child (3 specifications).

Appellant was late for muster on December 3, 4, and 5, 1993, and on Friday, January 28, 1994, he missed the 7:00 a.m. muster altogether. That same day, the Commanding Officer, Naval Station Anacostia, ordered that appellant be put into pretrial confinement "due to the seriousness of the charges against him, demonstration that he will continue to engage in misconduct, [and] statements from EM1 McCarthy that he would harm his family." The convening authority also noted that lesser forms of restraint had failed to control appellant's behavior. The convening authority's memo discussed at some length his understanding that appellant's wife was in fear of appellant and that EM1 McCarthy had threatened to harm his family or to flee the area. The document ended with the statement, "This action is being taken to ensure EM1 McCarthy's presence at his GCM proceedings and more importantly . . . to ensure that he does not harm others or himself."

Upon arrival at the brig, based in part on the command letter, appellant was placed in maximum custody on "suicide watch," despite his denials of suicidal tendencies. An additional basis for suicide watch, according to the testimony of the Brig Officer, Master Sergeant (MSgt) Murphy, was

> just the way he looked when he was locked up; he was very upset and things like that, sir. We put him on suicide precaution for the weekend, and after the weekend, on Monday, we had him evaluated by our psychiatrist that came over to the brig and saw him, and he thought he was not a

harm to himself, but he should remain in a max custody in the cell block, and then we gave him back his clothes, sir, and took him off suicide.

After the suicide watch was removed, appellant was placed into "maximum custody ... indoc" for orientation, then continued in "regular max" until February 22, 1994, when his trial was held. The decision to place him in maximum custody, as opposed to "medium close" (or "medium") custody, was approved by MSgt Murphy, who was a correctional specialist and was acting in the absence of the Brig Commander.

At his magistrate hearing, appellant requested that his status be changed from maximum to medium custody, but the magistrate denied that request. Subsequently, his counsel sent a letter on February 7, 1994, to the Brig Commander, making the same request, but it was again denied.

At trial, appellant requested 3-for-1 credit for each day he served in suicide watch and for each day he spent in maximum custody. He received the requested credit for the 3 days of suicide watch, but received only the standard day-for-day credit for his remaining time in maximum custody. At the post-trial Article 39(a), UCMJ, 10 USC § 839(a), hearing on the motion, MSgt Murphy also testified that, in classifying appellant for maximum status, he considered the seriousness of the charges then pending against appellant; his "pattern of poor judgment"; and his potential for a long sentence. He further asserted that the status was not imposed to punish, stigmatize, or intimidate appellant.

The military judge found that appellant had been retained in maximum status due to: the "seriousness" of his charges; the potential of "a long sentence"; his "prior pattern of poor judgment" (breaking the protective order and the restriction); "his potential threat to families and dependents on base"; the "safety" of himself and the brig staff; and "assurance" of his "presence for trial." The judge further found that the maximum status was not imposed "to punish, to intimidate, or to stigmatize" appellant; that the Brig Commander did not abuse his discretion in putting appellant into maximum status;

that the maximum-status decision was "supported by reasonable and legitimate governmental interests" (assuring safety and appellant's presence at trial); that the conditions "were no more onerous than necessary to ensure his presence for trial"; and that "[t]here was no evidence that the maximum close classification was intended as punishment."

Appellant raised the issue of additional credit for his days in maximum pretrial confinement, along with several issues on his appeal, to the Court of Criminal Appeals. Addressing that issue, that court found that, under either a *de novo* or abuse-of-discretion standard of review, the judge's findings were supported by the evidence and the Brig Commander's decision was within his discretion under Navy regulations. The court therefore declined to order any additional pretrial confinement credit. Unpub. op. at 3.

## ISSUE

We granted review of the following issue: WHETHER THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION FOR ADDITIONAL CONFINEMENT CREDIT WHERE HE RULED THAT THE COMMANDING OFFICER OF THE BRIG PROPERLY ASSIGNED APPELLANT TO MAXIMUM CUSTODY FOR PRETRIAL CONFINEMENT.

## DISCUSSION

■ As a preliminary issue, counsel for both appellant and appellee have addressed the proper standard for review of Article 13, UCMJ, 10 USC § 813, issues. Appellant urges us to adopt a *de novo* standard based upon *United States v. Washington*, 42 MJ 547 (A.F.Ct.Crim.App.1995). Appellee on the other hand argues that we should follow an abuse-of-discretion standard used in *United States v. Phillips*, 38 MJ 641 (ACMR 1993), *aff'd*, 42 MJ 346 (1995). The question whether a pretrial prisoner is suffering unlawful punishment is of both constitutional and statutory concern. *See* Art. 13; *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60

L.Ed.2d 447 (1979); *United States v. Palmiter*, 20 MJ 90 (CMA 1985).

Appellate review of questions arising under Article 13 merits the same overall standard of review as questions arising under Article 31(b), UCMJ, 10 USC § 831(b), questions of command influence arising out of Article 37, UCMJ, 10 USC § 837, or other questions having mixed constitutional and statutory concerns, such as effective assistance of counsel, unlawful searches and seizures, coerced confessions, and the like. That is, the ultimate issue of unlawful pretrial punishment "presents a 'mixed question of law and fact' qualifying for independent review." *Thompson v. Keohane*, 516 U.S. 99, 113, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995) (ultimate "in custody" question "is not a question of historical fact, but rather requires application of constitutional principles to facts," 516 U.S. at 112, 116 S.Ct. at 465).

Article 13 prohibits the imposition of punishment or penalty upon an accused prior to trial, as well as pretrial arrest or confinement conditions which are more rigorous than "the circumstances required" to ensure the accused's presence at trial. Counsel on this appeal have addressed whether a violation of Article 13 requires an element of intent or purpose to inflict punishment upon a pretrial detainee. By its terms and clear implications, Article 13 prohibits two types of activities involving the treatment of an accused prior to trial.

■ First, like RCM 304(f), Manual for Courts–Martial, United States (1995 ed.), it prohibits the imposition of punishment or penalty prior to trial. Such an imposition entails a purpose or intent to punish an accused before guilt or innocence has been adjudicated. *Bell v. Wolfish, supra.* Purpose and intent, however, are themselves classic questions of fact. *See, e.g.,* § 2.02, ALI Model Penal Code, *reprinted* in ALI *Model Penal Code and Commentaries* (Part 1) 225–53 (1985). For such "basic, primary, or historical facts" we will defer to the trial judge who is in the best position to evaluate them, and on those points, we will reverse

only for a clear abuse of discretion. *Thompson, supra* at 109–113, 116 S.Ct. at 464–65.

Second, Article 13 proscribes infliction of unduly rigorous circumstances during pretrial detention which, in sufficiently egregious circumstances, may give rise to a permissible inference that an accused is being punished, or may be so excessive as to constitute punishment. *Id.*; *United States v. James*, 28 MJ 214 (CMA 1989). We will address this appellant's issue under both prongs of Article 13 of the Code.

1. Did the Confinement Constitute Prohibited Punishment or Penalty?

■ The record before us contains findings of fact by the trial judge that appellant's classification as a maximum detainee was based upon a number of reasons: The seriousness of the charges then pending against him; the potential for a long sentence; a pattern of poor judgment (allegedly disobeying the protective order and violating restriction); the potential threat to families and dependents on base; the safety of the brig staff and the accused; and the risk that he would not be present for trial. These findings were supported by the testimony of the Master Sergeant who approved appellant's classification and the memo sent by appellant's commander to the military magistrate upon appellant's commitment to pretrial confinement.

The military judge specifically found that there was no evidence that the maximum classification was intended as punishment. Our own review of the record discloses no evidence that the maximum status was imposed with the intent to punish appellant for his alleged wrongful actions.

Appellant argues that the maximum pretrial custody from January 31 to February 22, 1994, was punishment rather than proper pretrial restraint. Appellant relies on three "indications" that the restraint was actually punishment under Article 13:

(1) He complained to the authorities about his conditions;

(2) The classification was determined by the Brig Officer or the Brig Commander, rather than by a Classification and Assign-

ment Board in accordance with SECNA-VINST 1640.9A ("Corrections Manual"); and

(3) The classification was not consistent with classification criteria set out in the Corrections Manual. Final Brief at 6.

The Government replies that pretrial restraint does not violate Article 13 unless it is "imposed for the purpose of punishment," citing *Bell, supra* at 538, 99 S.Ct. at 1873, which, it contends, was not the case here. The Government further contends that the conditions of which appellant complains herein "were not so 'excessive' as to" constitute punishment under *United States v. James, supra.* Answer to Final Brief at 6.

Citing *United States v. Huffman,* 40 MJ 225 (CMA 1994), for the proposition that an accused's failure to complain about pretrial confinement conditions "is strong evidence" that he "is not being punished," appellant argues, conversely, that an accused's complaint is therefore "strong evidence that he [or she] is being punished." Final Brief at 7. That argument overlooks the fact that, while few people keep silent when they have cause to complain, many complain even when they have no cause. The mere fact that a detainee complains of his level of confinement or of conditions thereunder does not, *per se,* support the conclusion that appellant was subjected to an impermissible punishment or penalty, or to conditions sufficiently rigorous as to violate Article 13. It is evidence, however, that appellant did not waive his claim.

Appellant's second and third indications are similarly unconvincing of a "punishment or penalty" violation of Article 13. While the procedures followed in this case may or may not have strictly followed the Corrections Manual, a failure to follow regulations does not justify the conclusion that confinement was a form of punishment or penalty. Violation of a service regulation concerning pretrial confinement does not, *per se,* require awarding additional credit. *United States v. Moore,* 32 MJ 56, 60 (CMA 1991).

Regarding appellant's second claim, although the Corrections Manual states that the Classification and Assignment Board "should meet at least once per week" to review issues such as classification of in-

mates, it is apparently not *required* to do so. Brig Officers have authority to make changes in a detainee's classification in the board's absence when circumstances indicate the necessity for immediate action. Art. 4204.2, Corrections Manual.

The Manual further states that the Brig Officer may assign an interim-custody classification to new arrivals pending the next meeting of the Classification and Assignment Board. Art. 6202.2. Apparently, the Classification and Assignment Board was not in session at the time appellant was removed from suicide watch and a decision on his classification was required. In this case, it appears that MSgt Murphy's decision to commit appellant to maximum restraint was performed in his capacity as Brig Officer in the absence of the Brig Commander and that the decision was ratified by the Brig Commander on February 1, 1994. It does not appear, therefore, that appellant's second claimed indicator demonstrates any imposition of punishment or intent to punish.

Appellant's third argument also fails to show any intent to punish him. He cites the Corrections Manual's provisions setting forth criteria to determine whether a prisoner should be placed into maximum, medium, or other custodial status. The Manual provides that "new prisoners, except those specifically deemed to be serious management problems, should be assigned" to medium custody during reception, Art. 4202.1, and should receive an initial medium classification "except when maximum custody is required due to special circumstances," Art. 6202.1. It further lists criteria for higher (maximum, medium) custody classifications versus lower (minimum, installation custody) classifications. Art. 4202.4 and 5.

As noted above, the Brig Officer gave a number of reasons for the imposition of maximum custody at the time appellant was classified, certainly enough to justify the conclusion that appellant was regarded as a serious management problem. The seriousness of the allegations against him, the possibility of a long sentence, the allegations in the commander's letter that appellant had threatened harm to his family and had threatened

flight, and the charges that he had broken restriction and violated a protective order twice certainly provided brig officials with reason to believe that appellant would be a management problem and supports the trial judge's findings that the maximum classification was not intended as punishment.

Further, although appellant's place within the classification criteria is arguable on both sides, the criteria themselves are specifically stated in the Manual to be "only indicators, not iron-clad rules." Art. 4202.6. In light of the findings of the military judge discussed above, the information available to brig officials at the time of classification, the discretion permitted by the Manual, and the fact that the Manual is an internal service regulation (as opposed to a statute or constitution), we are not prepared to hold, as a matter of law, that the brig officials in this case violated the provisions of the Manual or that such a violation, if it occurred, would violate the "punishment or penalty" prong of Article 13 of the Uniform Code of Military Justice.

In *James*, 28 MJ at 216, citing *Bell*, supra at 539, 99 S.Ct. at 1874, we recognized that conditions which are "arbitrary or purposeless," and are "not reasonably related to a legitimate" government objective, may allow a permissible inference of punishment. That is not the case here. As noted above, the military judge found that the imposition of maximum custody upon appellant was "supported by reasonable and legitimate governmental interests." We agree. If the conditions of pretrial restraint are "reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" 28 MJ at 216, quoting *Bell*, supra at 539, 99 S.Ct. at 1874, citing *Flemming v. Nestor*, 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960). Accordingly, we decline to draw any inference in this case that the purpose of the classification was punishment.

Thus, we find no clear abuse of the military judge's discretion in his conclusion that appellant's classification into maximum custody during his pretrial restraint was not done with any intent to punish appellant or inflict any penalty upon him for his alleged underlying misconduct, and that no impermissible "punishment or penalty" actually occurred as a result of the maximum custody from January 31 to February 22, 1994. Applying *de novo* Article 13's first prohibition against the imposition of pretrial punishment to the facts in this case, we hold that there was no violation with respect to that period of pretrial confinement.

2. Was the Confinement More "Rigorous" than Required to Ensure the Accused's Presence?

Appellant has briefed his objections to the conditions under which he was confined and has submitted that such conditions were unnecessary to ensure his presence for trial. The Government argues that the conditions were not unduly rigorous, that they were reasonable under the circumstances as then known to brig authorities, and that they were not so "excessive" as to constitute impermissible punishment under *United States v. James, supra.*

As noted above, the military judge found that the decision to place appellant in maximum confinement was "supported by reasonable and legitimate governmental interests" (ensuring safety and his presence at trial) and that the conditions under which appellant was confined "were no more onerous than necessary to ensure his presence for trial." Appellant, however, argues that the conditions exceeded those necessary to ensure his presence at trial and that, inasmuch as he did not cause any problems for the brig staff or engage in any misconduct while confined, a medium classification would have been adequate to meet the Government's interests. Final Brief at 9–10.

We hold that the judge did not abuse his discretion in finding that the classification was supported by reasonable and legitimate governmental interests. In considering the evidence in support of this ruling, we, like the judge, decline to engage in second-guessing the decision of the brig authorities. Of necessity, the Corrections Manual vests some discretion as to classification in the brig officer, who, in the absence of the Classification and Assignment Board, must make a decision

based upon the facts as they are known to him or her at the time. It appears from the record in this case that, based upon the information available at the time (*e.g.,* knowledge of the charges and their implications for sentencing, breach of prior restriction and protective orders, allegations of threats and possible flight described in the commander's memo to the military magistrate), brig authorities placed appellant into "maximum" custody. Appellant's subsequent good behavior does not serve to revise the facts as they existed and were known to brig authorities at the time of classification.

Appellant complained throughout his confinement of his conditions, either personally or through counsel, and has argued that the lesser status of medium custody would have ensured his presence at trial. However, a prisoner is not permitted to dictate the terms and conditions of his confinement. Such terms are within the discretion of the confining authorities. *United States v. Palmiter,* 20 MJ at 90. Based upon the evidence before us and in light of the governmental interests enumerated above, it does not appear that the terms of appellant's confinement in maximum custody were so egregious or excessive as to be "more onerous than necessary." Accordingly, we accept the military judge's finding that they were, in fact, not more onerous than necessary.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Judges CRAWFORD and GIERKE concur.

SULLIVAN, Judge (concurring):

I agree with my Brother's excellent opinion but write only to underscore one aspect of the case—the issue of prison confinement. There was a full appellate review at the Court of Criminal Appeals level and at our level, the level of a United States Court of Appeals, over the issue whether appellant would get credit for a portion or all of 22 days out of a 5–year sentence.

To me, the fact that the military justice system and a federal court of appeals would expend its resources to determine whether appellant gets out of prison 22 days earlier is an indication of the value a good criminal justice system should place on even one day of unjust confinement. I am proud that our Court gave full review to this case and I am reminded of the thoughts of one prisoner long ago:

> I know not whether Laws be right,
> Or whether Laws be wrong;
> All that we know who lie in gaol
> Is that the wall is strong;
> And that each day is like a year,
> A year whose days are long.

Oscar Wilde, *The Ballad of Reading Gaol,* Part 5, Stanza 1 (1898).

EFFRON, Judge (concurring in part and in the result):

I agree that the question of punishment under Article 13, Uniform Code of Military Justice, 10 USC § 813, is a mixed question of law and fact that requires *de novo* review. I do not agree, however, that the purpose or intent of an act that is alleged to constitute punishment is an issue of fact which should be reviewed only for an abuse of discretion.

As a matter of law, the critical question under Article 13 with respect to an allegation of pretrial punishment is whether the facts demonstrate a purpose or intent to punish. *See United States v. Palmiter,* 20 MJ 90, 95 (CMA 1985) ("the question to be resolved is ... whether any condition of his confinement was intended to be punishment," citing *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)); *cf. United States v. Phillips,* 42 MJ 346, 352 (1995) (Wiss, J., concurring in the result). The findings of the military judge as to the historical facts that describe the events at issue may be reviewed under an abuse of discretion standard, but the conclusions of the military judge as to whether such facts demonstrate an intent or purpose to punish should be reviewed under a *de novo* standard as a question of law.

In this case, although the majority asserts that it is applying an "abuse of discretion" standard, the majority's detailed analysis of the historical events reflects a *de novo* review. Regardless of the majority's denomination of its standard of review, I agree with

its conclusion that the actions taken in this case do not demonstrate a purpose or intent to punish as those terms are applied to an issue under Article 13.