**UNITED STATES**

*v.*

**Senior Airman Kelly J. ROGERS,**
**United States Air Force.**

**ACM S29502.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 3 Dec. 1997.

Decided 17 June 1999.

Appellate Counsel for Appellant: Colonel Douglas H. Kohrt and Captain Thomas R. Uiselt.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Colonel Michael J. Breslin, and Major Michael E. Savage.

Before YOUNG, Senior Judge, SPISAK, and SCHLEGEL, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Senior Judge:

The appellant pled guilty and was convicted of failing to go to a dental appointment, violating a lawful general regulation by using his government-issued American Express card for unauthorized purposes and failing to pay the debt he incurred by using the card, dishonorably failing to pay a debt to a friend, and dishonorably failing to maintain sufficient funds in his bank account to pay checks he made and uttered. Articles 86, 92, and 134, UCMJ, 10 U.S.C. §§ 886, 892, 934. By the terms of a pretrial agreement, because a punitive discharge was adjudged, the convening authority could not approve "confinement in excess of any pretrial confinement credit or pretrial punishment credit awarded by the military judge." The approved sentence consists of a bad-conduct discharge, confinement for 3 days, forfeiture of $600 pay per month for 4 months, and reduction to E–1. The

appellant claims the military judge erred by failing to grant him credit for illegal pretrial punishment. We disagree and affirm.

The appellant was assigned to Osan Air Base (AB), Korea, where he served as a Korean linguist. He had a top secret clearance and access to classified information. He was arrested for driving while intoxicated while on leave in California in November 1996, issued a series of dishonored checks beginning in December 1996, used his government-issued American Express card for unauthorized purchases, failed to make timely payments on the American Express bill, lied to his first sergeant about paying off his debts, and would disappear from work without explanation or excuse.

On 14 August 1997, the appellant failed to go to his 0700 dental appointment and then report to the dormitory manager for bay orderly duties. He did not report for bay orderly duties on 15 August, either. The appellant was apprehended at an off-base nightclub that evening after duty hours. The appellant was placed in pretrial confinement at the U.S. Army Confinement Facility, Camp Humphreys, Republic of Korea. On 17 August 1997, the commander directed that the appellant be released from confinement, but restricted him to the confines of Osan AB. The commander chose not to notify the Security Police of the restriction. Instead, the first sergeant sent an e-mail to all personnel in the squadron notifying them that the appellant was restricted to base and that they had a duty to inform the command if they saw him off-base. On 21 October, the appellant took an afternoon off from work without permission. By November, the appellant was abusing bathroom breaks to disappear from his place of duty and return to his dormitory room. He also claimed he was spending what the command believed to be an inordinate amount of time with his defense counsel. In response to the command's inquiries, the defense counsel's staff refused to verify the appellant's presence. Consequently, the commander ordered that, during the duty day, the appellant had to be escorted whenever he left his place of duty.

 Article 13, UCMJ, 10 U.S.C. § 813, prohibits the pretrial punishment of military

members "held for trial." While the historical background, the terms of the statute, and the legislative history suggest the applicability of Article 13 is limited to pretrial confinees, the Court of Appeals for the Armed Forces rejected such an interpretation. "Article 13 on its face is not limited to pretrial confinees, but instead applies to servicemembers 'held for trial.'" *United States v. Combs*, 47 M.J. 330, 333 (1997). The Court has not further defined "held for trial," but it seems clear from the case law that a military member who is awaiting trial and has his freedom of movement "substantially burdened" is "held for trial." *Id.* at 334 (Cox, C.J., concurring). Under the circumstances of this case, we find the appellant was held for trial.

 Whether a pretrial prisoner is being unlawfully punished is of both constitutional and statutory concern. *United States v. McCarthy*, 47 M.J. 162, 164 (1997) (citing Article 13, UCMJ; *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *United States v. Palmiter*, 20 M.J. 90 (C.M.A.1985)). It "presents a 'mixed question of law and fact' qualifying for independent review." *McCarthy*, 47 M.J. at 165 (quoting *Thompson v. Keohane*, 516 U.S. 99, 113, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)).

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.... Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Wolfish*, 441 U.S. at 538–39, 99 S.Ct. 1861. *Accord Palmiter*, 20 M.J. at 95.

 The appellant attacks his restriction as pretrial punishment on several fronts.

We will examine each of these issues separately.

(1) *The adverse impact on preparation of his defense and ability to associate with friends.* We have no doubt that the restriction had an adverse impact on the appellant's ability to associate with his friends, especially Koreans who resided off base. That, of course, is a necessary consequence of restricting an accused to the confines of the installation. The appellant failed to meet his burden of establishing that the restriction had any adverse impact on his ability to prepare a defense. The impact of the restriction does not establish that the commander's intent was to punish the appellant or that the restriction was not reasonably related to a legitimate goal.

(2) *The commander admitted restricting the appellant to get his attention.* During a pretrial interview, the commander told the defense counsel that he intended the restriction to get the accused's attention. He hoped the light would go on and the accused would take responsibility for his actions. The commander's hope that restriction would have the ancillary benefit of getting the appellant's attention does not transform this restriction into illegal pretrial confinement. The evidence establishes that the commander restricted appellant to protect classified information and because he thought there was substantial risk the appellant might not show up for trial. Based on the appellant's track record, we find the commander was justified in this conclusion.

(3) *The commander should have looked to Security Forces to enforce the restriction rather than squadron members.* While the commander's actions in having the members of his command police the restriction was somewhat unorthodox, we do not believe it is evidence of intent to punish. The commander's actions were not a condition on the appellant's liberty and were reasonably related to a legitimate goal—making sure the accused did not leave the base. We have no doubt that it was a much more effective deterrent than notifying the security forces who may not have known the appellant personally. Furthermore, it is difficult to fault the conditions a commander places on restriction when, as here, pretrial confinement would not have been inappropriate.

(4) *The commander admitted that appellant was not a flight risk.* The military judge accepted the commander's explanation that the appellant was not a flight risk *as long as he was restricted.* We adopt the military judge's finding as it was not clearly erroneous.

Applying the *Wolfish/Palmiter* test, we are convinced that the commander did not have an intent to punish the appellant prior to trial. The commander's actions were reasonably related to the legitimate governmental interest in having the appellant present for trial and to stay at his place of duty working rather than returning to his room.

We are somewhat puzzled by the defense counsel's objection to the commander appointing an escort for the appellant during duty hours. When the appellant was initially restricted, he was not assigned an escort during the duty day. But then, he started disappearing from his place of duty and did not return promptly from his appointments with the defense counsel. When queried by the commander, the defense counsel and his staff refused to confirm the presence of the appellant at his appointment. We understand that normally "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation...." *Air Force Rules of Professional Conduct* Rule 1.6(a) (10 Feb. 98). Thus, the defense counsel may have believed he had a duty not to answer the commander's query. We do not need to rule on this question. However, defense counsel must understand that actions have consequences. We are still a military organization, and a commander has a right, even a duty, to know where his troops are. Counsel should not be surprised, therefore, that a commander who cannot confirm the whereabouts of a subordinate with a penchant for disappearing, feels compelled to take sterner measures to insure that the subordinate returns to duty in a timely fashion, or that a commander requires defense counsel to meet

with a client inside the confinement facility instead of at the attorney's office.

The defense has failed to establish a violation of Article 13, UCMJ. The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the accused occurred. Accordingly, the findings and sentence are

AFFIRMED.

Judge SPISAK and Judge SCHLEGEL concur.