**UNITED STATES**

v.

**Steve M. KINZER II, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 200001092.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 23 April 1999.

Decided 15 Aug. 2001.

Maj Eric P. Gifford, USMC, Appellate Defense Counsel.

Maj Robert M. Fuhrer, USMC, Appellate Government Counsel.

Before DORMAN, Senior Judge, VILLEMEZ, and HADDOCK, Appellate Military Judges.

HADDOCK, Judge:

The appellant was convicted, pursuant to his pleas, of two specifications of wrongful possession of a controlled substance and one specification of distribution of a controlled substance in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. The military judge, sitting alone as a general court-martial, sentenced the appellant to a bad-conduct discharge, forfeiture of all pay and allowances, confinement for 2 years and 6 months, and reduction to pay grade E–1. On 22 June 2000, the convening authority approved the sentence as adjudged.

We have carefully reviewed the record of trial, the appellant's sole assignment of error, and the Government's response. We find merit in the assignment of error and will afford appropriate relief in the decretal paragraph. In all other respects, we have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 USC §§ 859(a) and 866(c).

### Illegal Pretrial Confinement

The appellant was placed in pretrial confinement on 17 August 1998. Charge Sheet at 1; Record at 24, 101. He was categorized as a "maximum custody detainee", and placed in special quarters, because he potentially faced a long period of confinement. Record at 25, 37, 81, 82; Appellate Exhibit I at 1. The appellant remained in special quarters until 24 March 1999. Record at 56, 104; Defense Exhibit C for Identification; Defense Exhibit E for Identification.[1]

He was reclassified from maximum security to medium security on 21 August 1998, but remained in special quarters as opposed to medium "general population." Again, the rationale was the possibility of a lengthy sentence, and "the seriousness of the alleged offense," which is nothing more than a different way of saying "the possibility of a long sentence." Record at 52. The appellant's assigned counselor, Staff Sergeant Martin, testified that his potential confinement standard for his special-quarters-assignment analysis was seven years, and he believed that there was a length-of-sentence line in the Standard Operating Procedures for the brig at Camp Lejeune, although he could not quote it. Record at 82.

 Other reasons given for the continued special quarters assignment were "the lack of information that we had about Detainee Kinzer at that time," and because Detainee Kinzer "did not completely understand or agree with why he was in pretrial confinement, which is an additional consideration." Record at 52. Both of these reasons are without substance. A decision based upon no information is, by definition, arbitrary. To be reasonable and not arbitrary, a decision to impose more stringent conditions on pretrial detention must be based on facts, not the absence of facts. The other reason, as the military judge pointed out in his questioning of CWO2 Brown, the Brig Officer, ignores the obvious trait of human nature that a person who has been falsely accused would never understand or agree with why he was

in pretrial confinement. Record at 59–60. Therefore this policy would result in the lengthy detention in special quarters of an innocent man with no disciplinary history, facing serious charges, based on perjured accusations, and who, because he believed he would be acquitted at trial, would not accept a pretrial agreement and plead guilty.

Other factors alleged were brig disciplinary reports for possession of contraband (a magazine and a *Manual for Courts–Martial* that belonged to someone else and too large a quantity of dental floss). Additionally, the appellant had talked to Detainee Tunidor, who was a witness against him. Record at 47, 57.

The appellant ultimately entered into a pretrial agreement. Appellate Exhibits III and IV. The brig was notified of the pretrial agreement on 23 March 1999, in a fax from trial counsel, which also recommended removing the appellant from special quarters. This fax also instructed the brig that a direct order from his brig counselor not to talk to Detainee Tunidor or any other witnesses in his case would eliminate the need to separate the appellant from the general population. Appellate Exhibit VIII.

In fact, the very next day, the appellant was moved to the general population. Record at 56; Defense Exhibit E for Identification. With the signing of the pretrial agreement, all of the reasons for keeping him in special quarters were eliminated, including the disciplinary reports listed above. Even though the seven days extra duty imposed on the appellant for the last of those infractions was still in effect on 24 March 1999, he was still removed from special quarters. Defense Exhibit C for Identification.

The record is replete with references to the fact that the major factor, if not the *only* factor, in the decision to remove the appellant from special quarters, was the fact that he was going to plead guilty and had a pretrial agreement. *See* Record at 25, 53, 56, 86, 104; Defense Exhibit D for Identification

---

1. The military judge considered Defense Exhibit's C, D, E, and G for Identification in hearing and denying the appellant's motion for relief from illegal pretrial confinement, along with Ap-

pellate Exhibit's I, II, VI, VII, VIII, IX, and X. Record at 22–39. The Defense Exhibits more properly should have been marked as appellate exhibits, and we shall consider them accordingly.

at 1, 2, 4, 5, 7; Defense Exhibit E for Identification.

 Article 13, UCMJ, 10 USC § 913, prohibits the intentional imposition of pre-trial punishment, and also the imposition of restrictions on liberty which exceed that needed to ensure an accused's presence for trial. *United States v. McCarthy*, 47 M.J. 162, 166 (1997). We find no evidence of record of an intent to punish the appellant by placing him in special quarters. Rather we find that the decision to place the appellant in special quarters was made in conformance with standard operating procedures then in existence at the brig at Camp Lejeune. One standard procedure was that detainees facing more than seven years of confinement were considered escape risks per se, and assigned to special quarters. Another procedure was that removal from special quarters was largely dependent upon entering into a pre-trial agreement and pleading guilty.

The fact that the appellant was released from special quarters the very next day after securing a pretrial agreement that limited his post-trial confinement to only three years is strong evidence that his assignment to special quarters was based primarily upon a length-of-sentence policy, and not upon other appropriate factors. Accordingly, we find that the decision to place the appellant in special quarters was based on an arbitrary policy and resulted in the imposition of conditions more rigorous than necessary to insure his presence for trial. *See United States v. Anderson*, 49 M.J. 575, 577 (N.M.Ct.Crim. App.1998). We will grant relief in our decretal paragraph.

### Conclusion

Accordingly, we affirm the findings and sentence as approved below. We order credit of 220 days against the appellant's sentence to confinement. This is in addition to the administrative credit the appellant has already received under *United States v. Allen*, 17 M.J. 126 (C.M.A.1984).

Senior Judge DORMAN and Judge VILLEMEZ concur.