UNITED STATES, Appellee

v.

Thomas A. CRAWFORD, Captain
U.S. Marine Corps, Appellant

No. 05-0266

Crim. App. No. 9901590

United States Court of Appeals for the Armed Forces

Argued November 2, 2005

Decided March 6, 2006

ERDMANN, J., delivered the opinion of the court, in which
GIERKE, C.J., and CRAWFORD, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant:  Lieutenant Brian L. Mizer, JAGC, USNR (argued);
Lieutenant Jennie L. Goldsmith, JAGC, USN (on brief); Lieutenant
Commander Jason S. Grover, JAGC, USN.

For Appellee:  Lieutenant Kathleen A. Helmann, JAGC, USNR
(argued); Commander Charles N. Purnell, JAGC, USN (on brief);
Colonel William K. Lietzau, USMC, and Major Raymond E. Beal II,
USMC.

Military Judge:  T. B. Hamilton

**This opinion is subject to revision before final publication.**

Judge ERDMANN delivered the opinion of the court.

Captain Thomas A. Crawford pled guilty to conspiracy to commit larceny and wrongful disposition of military property and explosives, wrongful sale of military property, larceny of military property, wrongful transportation and sale of explosive material knowing it to have been stolen, and wrongful disposition of stolen ammunition in violation of Articles 81, 108, 121 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 908, 921, 934 (2000).  He was sentenced by members to dismissal, confinement for thirty years, and forfeiture of all pay and allowances.  The convening authority approved the sentence but suspended confinement in excess of twenty years.  The United States Navy-Marine Corps Court of Criminal Appeals affirmed the lesser included offense of attempting to conspire to commit larceny and wrongful disposition of military property and explosives, and affirmed the remaining findings and the sentence in an unpublished decision.  United States v. Crawford, No. NMCCA 9901590 (N-M. Ct. Crim. App. Oct. 28, 2004).

We granted Crawford's petition for grant of review on the following issue:

> WHETHER APPELLANT SUFFERED ILLEGAL PRETRIAL
> CONFINEMENT IN VIOLATION OF ARTICLE 13,
> UNIFORM CODE OF MILITARY JUSTICE, WHEN HE
> WAS CONFINED AT THE BASE BRIG, MARINE CORPS
> BASE, CAMP LEJEUNE, NORTH CAROLINA, UNDER
> CONDITIONS MORE RIGOROUS THAN THOSE REQUIRED

                    TO ENSURE HIS PRESENCE AT TRIAL BETWEEN HIS
                    ARREST ON 16 OCTOBER 1997 AND HIS SENTENCING
                    HEARING ON 10 JUNE 1998.

    Article 13, UCMJ, 10 U.S.C. § 813 (2000), provides in part

that when an individual is placed in pretrial confinement, the

conditions of that confinement shall not be "more rigorous than

the circumstances require to ensure his presence" for trial.

Through a post-trial declaration, Crawford contends that he is

entitled to sentence relief because the conditions of his

pretrial confinement violated this prohibition.  We hold that

Crawford has failed to meet his burden of demonstrating a

violation of Article 13, UCMJ.


                          BACKGROUND

    Crawford was placed in pretrial confinement on October 16,

1997.  His arrest and confinement followed a lengthy joint

investigation by the Federal Bureau of Investigation (FBI) and

the Naval Criminal Investigative Service (NCIS) into the theft,

disposition and sale of military property -- explosives, guns,

grenades, and ammunition -- on the gun show circuit.  Crawford,

an explosive ordinance disposal officer, commenced his

involvement in this criminal enterprise in the fall of 1996 when

he agreed with a former co-worker to steal military property and

explosives and transfer or sell the property to other

individuals.  Unbeknownst to Crawford, his former co-worker was

working in cooperation with the FBI and NCIS and facilitated the transfer and sale of the stolen property to undercover agents. Crawford's active participation in the theft, wrongful disposal and sale of military property was investigated for almost a year before he was apprehended.

Upon his entry into pretrial confinement Crawford was placed in a holding/observation cell for one week and following a magistrate's hearing he was placed in "'B' row maximum custody." Crawford remained in maximum custody until his trial ended on June 10, 1998.

At trial, Crawford moved for the military judge to order his release from pretrial confinement. In support of this motion, Crawford presented evidence to show that he was not dangerous and that he was not a flight risk, but he did not argue that the conditions of his pretrial confinement were more rigorous than necessary. Additionally, in his written unsworn statement and through defense counsel's sentencing argument, Crawford urged that the dimensions of his cell and his custody in "special quarters" be considered in determining an appropriate sentence, but he did not argue an Article 13, UCMJ, violation.

After trial, in his Rule for Courts-Martial (R.C.M.) 1105 clemency submission, Crawford sought confinement credit claiming that the conditions of his pretrial confinement violated Article

4

13, UCMJ. Crawford supported this claim with his own declaration setting forth the conditions of his pretrial confinement. Although this post-trial clemency submission referenced Article 13, UCMJ, and made reference to the fact that Article 13, UCMJ, prohibits "unduly onerous conditions of pretrial restraint", the crux of that complaint was that Crawford was punished prior to trial, not that he was subjected to conditions more rigorous than necessary to assure his presence for trial.

While Crawford raised the matter of pretrial punishment in his initial brief before the Navy-Marine Corps Court of Criminal Appeals, it was not until he submitted a Supplemental Assignment of Error that he specifically alleged that the conditions of his pretrial confinement were more rigorous than necessary to ensure his presence at trial. The Supplemental Assignment of Error was filed at the Court of Criminal Appeals nine months after his initial brief was filed before that court. The Supplemental Assignment of Error referenced a declaration by Crawford dated April 6, 1999, in which he set forth the conditions of his pretrial confinement.

According to Crawford's declaration, every cell he occupied was eight feet by eight feet by ten feet in dimension and furnished with a steel rack, single foam mattress, a combination sink and toilet, a student desk, and a plywood lockerbox. As

stated above, Crawford was initially placed in an observation cell for one week. During this initial one-week period he was stripped to his undershorts, checked by a guard every five minutes, given only a booklet of brig rules to read and allowed only a ten-minute cold water shower each day. He could not exit the cell without handcuffs and leg irons. Crawford claims he was required to sit on the mattress and not lay down during the day, to stand whenever he was checked by the guards and to wrap himself up in a blanket whenever an officer checked on him. Crawford notes that he was not allowed phone calls until Sunday evening the week of his arrest.

After the magistrate's hearing, Crawford was relocated but remained in maximum custody. He requested legal reference materials, but none were provided because the brig did not maintain law books in its library. In his declaration Crawford asserts that the heating system in the brig did not work "[d]uring the winter of 1997-98" and that "the daily temperature inside special quarters during this period was between 30-45 degrees." He also claims that during this period he was not allowed to wear a field jacket in the brig and he was not permitted to use a blanket before evening. Crawford's declaration details some of his daily regimen, including a daily shower to which he was taken in handcuffs. He was not allowed to lay down during the day and he was permitted only infrequent

"sunshine calls" of about ten minutes for exercise. His declaration states that he was not permitted to see the social worker or take part in groups and his requests to see a chaplain and to get assistance with family and pay matters were "pushed aside." Crawford claims that he was subject to different rules regarding mail and phone calls because he was "a special case."

Crawford states he was handcuffed and in leg irons any time he left his cell which included work details and that he was required to sweep, mop and polish more than other prisoners. He asserts he was required to scrape lead-based paint without adequate ventilation or protection and that he was not permitted to wash prior to eating. He claims he was not allowed to have private unmonitored visits with his attorney and he was not allowed to visit his attorney's office until late February 1998.

The Navy-Marine Corps court found that Crawford "ha[d] not demonstrated . . . that the conditions were more rigorous than necessary to ensure his presence at court." Crawford, slip op. at 5.

DISCUSSION

Article 13, UCMJ, states:

No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances require to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

7

United States v. Crawford, No. 05-0266/MC

Thus, Article 13, UCMJ, prohibits:  (1) intentional imposition of punishment on an accused before his or her guilt is established at trial; and (2) arrest or pretrial confinement conditions that are more rigorous than necessary to ensure the accused's presence at trial.  United States v. King, 61 M.J. 225, 227 (C.A.A.F. 2005); United States v. Inong, 58 M.J. 460, 463 (C.A.A.F. 2003); United States v. Fricke, 53 M.J. 149, 154 (C.A.A.F. 2000).  The question whether Crawford is entitled to credit for a violation of Article 13, UCMJ, is a mixed question of fact and law.  United States v. Smith, 53 M.J. 168, 170 (C.A.A.F. 2000); United States v. McCarthy, 47 M.J. 162, 165 (C.A.A.F. 1997).  Whether the facts amount to a violation of Article 13, UCMJ, is a matter of law the court reviews de novo. United States v. Mosby, 56 M.J. 309, 310 (C.A.A.F. 2002).

At the outset we agree with Crawford that his failure to raise this particular claim at trial did not constitute waiver. Crawford's case was tried well before our decision in Inong, 58 M.J. at 465, in which we held prospectively that failure to raise an Article 13, UCMJ, violation at trial waives appellate consideration of that issue in the absence of plain error. Crawford's case was also tried before our decisions in United States v. Tanksley, 54 M.J. 169, 177-78 (C.A.A.F. 2000), and United States v. Southwick, 53 M.J. 412, 416 (C.A.A.F. 2000), applying a "tantamount to affirmative waiver" rule when an

8

accused did not assert an Article 13, UCMJ, claim at trial, but instead argued the conditions of his pretrial restraint as a factor to mitigate the sentence. Thus, we do not apply waiver in this case. Instead we will proceed to the merits of Crawford's claim. See United States v. Huffman, 40 M.J. 225, 227 (C.M.A. 1994) (reflecting the law at the time of Crawford's trial that "we will not invoke waiver [of alleged Article 13, UCMJ, violations] unless there is an affirmative, fully developed waiver on the record."), overruled by Inong, 58 M.J. at 463-64.[1]

The burden rests upon Crawford to establish a violation of Article 13, UCMJ. Mosby, 56 M.J. at 310. If he does so then R.C.M. 305(k) provides him "additional credit for each day of pretrial confinement that involves an abuse of discretion or unusually harsh circumstances." See Inong, 58 M.J. at 463; United States v. Spaustat, 57 M.J. 256, 261 (C.A.A.F. 2002); United States v. Suzuki, 14 M.J. 491, 493 (C.M.A. 1983). Because the conditions of Crawford's confinement relate to both ensuring his presence for trial and the security needs of the confinement facility, and because we are reluctant to second-

---

[1] Crawford also argues that the Court of Criminal Appeals erroneously applied this court's decision in United States v. Inong, 58 M.J. 460, 465 (C.A.A.F. 2003) (establishing a prospective rule of waiver if an Article 13, UCMJ, claim is not raised at trial), to his case. We disagree. Our review of the lower court's decision convinces us that the citations to Inong

guess the security determinations of confinement officials, Crawford bears the burden of showing that the conditions were unreasonable or arbitrary in relation to both purposes. See King, 61 M.J. at 228; Mosby, 56 M.J. at 310; see also Bell v. Wolfish, 441 U.S. 520, 540 n.23 (1979) (noting that "maintaining security and order and operating the institution in a manageable fashion . . . 'are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974)) (emphasis added).

We have no findings of fact against which to consider or assess Crawford's claims that the conditions of his pretrial confinement were more rigorous than necessary. In dealing with post-trial, extra-record assertions of fact such as those in Crawford's declaration, we look to the principles of United States v. Ginn, 47 M.J. 236, 248 (C.A.A.F. 1997), to determine whether we can resolve the issue without further factfinding proceedings. In this case, we note that if an "affidavit is factually adequate on its face but the appellate filings and the record as a whole 'compellingly demonstrate' the improbability

---

were appropriate references to principles of Article 13, UCMJ,

10

of those facts, the Court may discount those factual assertions and decide the legal issue."  Id.  Although this record does not wholly refute each aspect of Crawford's post-trial declaration, it does contain relevant evidence which we find appropriate to consider in resolving Crawford's claim.

The record contains some evidence of the conditions Crawford experienced in pretrial confinement.  Crawford's unsworn statement offered on sentencing referred to the fact that he had been kept in "an 8 x 8 cell at the brig for the last 9 months since [his] arrest."  His wife indicated that during the first six days of confinement, Crawford was "on a blanket in his underwear in his cell with no contact with us. . . ."  Crawford's son visited him for portions of an entire week, regularly on the weekends, and often during the week.  His daughter visited him "just about every weekend" after the first three months, and she would often bring Crawford's grandson to visit him.  A "Brig Progress Report" dated June 4, 1998, reflects "outstanding conduct," participation in group religious and counseling sessions, and that Crawford remained optimistic. The report assessed Crawford's attitude and behavior in confinement as "positive."

In addition, the record pertaining to the decision to confine Crawford prior to trial and the military judge's

---

jurisprudence and not application of a rule of waiver.

11

decision to retain Crawford in pretrial confinement are significant to this issue.  The magistrate considered Crawford's comments about blowing up buildings on Camp Lejeune, his alleged threats to his wife, Crawford's willingness to instruct persons he believed to be members of organized crime in how to use the explosives Crawford sold, and the fact that investigators were not certain all the explosives stolen by Crawford had been recovered.  Crawford made a number of statements to undercover agents, including Special Agent (SA) Truesdale of the NCIS, who had introduced himself to Crawford as a member of organized crime.  Crawford made an offer to SA Truesdale to train people to handle explosives and build bombs.  Agent Truesdale indicated that Crawford knew that Truesdale was creating a cache of weapons for potential use against the United States Government. Crawford discussed his ability to make bombs and a radiation dispersing device as well as where he would place bombs on the military installation and how to blow up the Chesapeake Tunnel. Crawford described to SA Truesdale in graphic detail how he would kill his ex-wife.

These matters of record support two conclusions.  First, the record contradicts Crawford's claims about visitation and group participation.  The record indicates he had numerous visits from his family and participated in group religious and counseling sessions.  Crawford's broad claims of isolation and

12

exclusion from confinement facility activities are discredited. Second, there is a sound basis in the record for the conclusion that Crawford presented a high risk of future serious misconduct including mass violence and physical harm to others. Balancing these record matters against Crawford's post-trial declaration, and taking the unrefuted portions of that declaration as true, we hold that Crawford has not met his burden of demonstrating a violation of Article 13, UCMJ.

We agree with both the military magistrate and the military judge that pretrial confinement was appropriate for Crawford. Neither erred in determining that Crawford was both a flight risk and a serious risk for future misconduct. Furthermore, Crawford appeared to have had access to money from his weapons sales as well as other weapons and explosives. Thus he presented a special security concern for confinement facility officials and, from the outset, Crawford warranted heightened scrutiny.

While the conditions of his pretrial confinement were stark, Crawford has presented nothing in his declaration to refute the very strong indication that his was a unique case requiring special security considerations. "'Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention'" provided such

devices are reasonable under the circumstances and constitutional. United States v. Palmiter, 20 M.J. 90, 99 (C.M.A. 1985) (Everett, J., concurring in the result) (quoting Bell, 441 U.S. at 537); see also McCarthy, 47 M.J. at 168 ("subsequent good behavior does not serve to revise the facts as they existed and were known to brig authorities at the time of classification").  Moreover, Crawford's failure to complain prior to his appeal to the Court of Criminal Appeals is "strong evidence" that Article 13, UCMJ, was not violated.  See Huffman, 40 M.J. at 227; Palmiter, 20 M.J. at 97.

We have carefully weighed the fact that Crawford was segregated for a week of observation[2] then retained as a "maximum custody" prisoner for almost nine months, the entire time he was in pretrial confinement.  By virtue of our decision in this case we do not wish to convey the impression that we condone arbitrary policies imposing "maximum custody" upon pretrial prisoners.[3]  We will scrutinize closely any claim that maximum

---

[2] The segregated "evaluation, classification, and examination of newly received prisoners about whom the correctional and medical staff know little or nothing" is "necessary" and "related to a rational custodial purpose."  United States v. Palmiter, 20 M.J. 90, 92 n.2 (C.M.A. 1992).

[3] Maximum custody has the following characteristics:  (1) immediate and continuous supervision; (2) no work details outside the cell; (3) assignment to the most secure quarters; (4) two or more escorts whenever the prisoner is outside his cell; (5) restraints whenever outside the maximum security area; and (6) additional restraints for movement where authorized by

custody was imposed solely because of the charges rather than as a result of a reasonable evaluation of all the facts and circumstances of a case.  Where we find that maximum custody was arbitrary and unnecessary to ensure an accused's presence for trial, or unrelated to the security needs of the institution, we will consider appropriate credit or other relief to remedy this type of violation of Article 13, UCMJ.  See Palmiter, 20 M.J. at 99 (Everett, J., concurring in the result) (quoting Bell, 441 U.S. at 538-39) (indicating that arbitrary conditions may be inferred to constitute punishment).

Here, however, the serious charges against Crawford, the potential for lengthy confinement, Crawford's threats and his apparent ability to execute those threats, his access to unknown quantities of weapons and explosives, and his professed willingness to resort to violent means against what he viewed as Government oppression provide sufficient reason to classify Crawford as a high-risk inmate.  See McCarthy, 47 M.J. at 166-67.  "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Bell, 441 U.S. at 547.  We will not second-guess the security determinations of confinement officials under these

---

the commanding officer of the brig.  Dep't of the Navy, Instr.

United States v. Crawford, No. 05-0266/MC

circumstances. See Palmiter, 20 M.J. at 100 n.2 (Everett, J.,
concurring in the result) (quoting Bell, 441 U.S. at 547-48,
quoting Pell, 417 U.S. at 827).[4] Moreover, Crawford has not
provided specific allegations that he was treated differently
from other maximum security prisoners.

In other respects, Crawford has failed to present the
substantial evidence necessary to support his Article 13, UCMJ,
claim. For example, while subjection to cold temperatures could
amount to an Article 13, UCMJ, violation, Crawford has made only
a broad generalized allegation of exposure to cold temperatures
"[d]uring the winter of 1997-98." Climatological data offered
by Crawford's appellate defense counsel does not support a claim
of persistent near or below freezing temperatures outside the
brig much less inside special quarters for the entire winter.
Further, Crawford provides no details that would enable us to
ascertain whether he called attention to the problem, whether
brig officials responded to any complaints or took independent
corrective steps, whether the problem was persistent or
intermittent, or whether prison officials were at all
responsible or abusive with respect to the matter of temperature
within special quarters.

---

1640.9B, Corrections Manual para. 4201.2.a. (Dec. 2, 1996).

[4] See also Palmiter, 20 M.J. at 96 ("Under no circumstance should
the prisoner be the one to dictate the terms and conditions of

Crawford's allegations about lead-based paint are also inadequate to show an Article 13, UCMJ, violation. His declaration asserts that he scraped lead-based paint without adequate ventilation or protection. Crawford provides no specific facts upon which we can ascertain the extent of this problem or whether it was an abusive activity. To the contrary, Crawford reveals in his declaration that there was testing conducted after he raised the matter and that he was later informed it was "all right."

For the foregoing reasons we conclude that Crawford has failed to sustain his burden of establishing entitlement to additional sentencing credit for a violation of Article 13, UCMJ.

### DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

---

his confinement. This should always be left up to the correctional facility commanders and the respective services.").