Judge STUCKY
delivered the opinion of the Court.
At trial, the military judge convicted Appellant of using illegal drugs, based on the results of two command-directed urinalyses conducted as follow-ups to a previous positive random drug test. The military judge concluded that the follow-up urinalyses were lawful inspections, not inadmissible searches. Whether a follow-up urinalysis constitutes an inspection turns on the purpose of that examination. We granted review of the following issue:
WHETHER THE MILITARY JUDGE ERRED IN FINDING APPELLANT’S ADDITIONAL URINALYSES CONDUCTED PURSUANT TO UNITED STATES V. BICKEL, 30 M.J. 277 (C.M.A.1990), WERE FOR A PERMISSIBLE PURPOSE.
We hold that the military judge did not err in finding that the follow-up urinalyses were *64 conducted for permissible purposes, and affirm the judgment of the United States Air Force Court of Criminal Appeals (CCA).
I.
A special court-martial consisting of a military judge sitting alone convicted Appellant, consistent with his plea, of one specification of using marijuana. Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2006). Contrary to his pleas, the military judge convicted Appellant of two specifications of using marijuana at other times, and one specification of using cocaine. Id. The convening authority approved the adjudged sentence: a bad-conduct discharge, confinement for five months, forfeiture of $800.00 per month for five months, and reduction to the lowest enlisted grade. The CCA affirmed. United States v. Ayala, No. ACM S31550, 2009 CCA LEXIS 266, at *9, 2009 WL 2211462, at *3 (A.F.Ct.Crim.App. July 15, 2009) (unpublished).
II.
On January 30, 2007, the staff judge advocate (SJA) proposed a new drug policy to the wing commander. “This policy would require all members whose urine tests positive for illegal drugs to provide another sample for testing by the end of the first duty day following receipt of a positive test result.” The SJA provided several reasons for his recommendation, including:
• “If the only evidence available at trial of illegal drug use is the positive urinalysis test, court members are frequently hesitant to convict the member for illegal drug use.”
• “Because of the increased opportunity for acquittal in illegal drug use prosecutions based solely on a positive urinalysis test, more often than not, the accused elects to litigate his case at trial. The costs associated with such litigation [are expensive].”
• “The proposed Urinalysis Re-Inspection provides an opportunity to secure a second positive test result against the member.... [which] would be available at trial_ [and] substantially increases the likelihood of conviction [or guilty plea].... ”
• Noting United States v. Bickel, 30 M.J. 277 (C.M.A.1990), the SJA recommended the re-inspection “to further aid in detecting drug abusers within our active duty population, potentially decrease litigation risks and costs, and potentially aid in swifter judicial action.”
Emphases added.
Two days later, on February 1, 2007, the wing commander announced the new policy and stated his purpose for adopting it:
The purpose of urinalysis inspection is to ensure the security, military fitness, and good order and discipline. To fulfill that purpose, follow-up urinalysis inspection will be utilized as a continuation of the original random inspection. The unlawful use of controlled substances by a member of this installation has the potential to seriously undermine our missions, endanger the lives of other members, and negatively impact the nation’s security. Follow-up urinalysis inspections are part and parcel to the random urinalysis inspection program at [Davis-Monthan Air Force Base], and not a criminal investigative tool, regardless of the admissibility of such test results as evidence in [UCMJ] actions.
Emphases added.
In June 2008, Appellant was randomly selected to provide a urine sample. In early July, when Appellant’s sample was reported as being positive for marijuana, he was directed to provide another urine sample for testing, pursuant to the policy established by the wing commander on February 1, 2007. A few weeks later, when the second sample tested positive for marijuana, Appellant was again directed to provide another urine sample for testing. This test yielded a positive result for both marijuana and cocaine.
At trial, Appellant moved to suppress the follow-up examinations as subterfuge searches. As evidence on the motion, the Government submitted, without defense objection, an affidavit from the then-retired wing commander, which stated:
*65 The purpose of the policy was to ensure security, military fitness, and good order and discipline. As I stated in the 1 Feb [20]07 memorandum, the unlawful use of controlled substances by a member assigned to the installation has the potential to seriously undermine the mission, endanger the lives of other members, and negatively impact national security. Follow-up urinalysis inspections are part of the random urinalysis inspection program ... and not a criminal investigation tool.
Applying the clear and convincing evidence standard, the military judge found that Appellant’s urine samples were collected “pursuant to a valid inspection” in accordance with Military Rule of Evidence (M.R.E.) 313, and denied the motion.
III.
Evidence obtained from inspections conducted in accordance with M.R.E. 313 “is admissible at trial when relevant and not otherwise inadmissible” under the Military Rules of Evidence. M.R.E. 313(a).
An “inspection” is an examination of the whole or part of a unit, organization, [or] installation, ... conducted as an incident of command the primary purpose of which is to determine and to ensure the security, military fitness, or good order and discipline of the unit, organization, [or] installation .... An examination made for the primary purpose of obtaining evidence for use in a trial by court-martial or in other disciplinary proceedings is not an inspection ivithin the meaning of this rule.
M.R.E. 313(b) (emphasis added).
A.
At trial, the Government conceded that it had to establish by clear and convincing evi-denee that the examinations were not made for the primary purpose of obtaining evidence for trial.[1] The military judge found that the Government had established by clear and convincing evidence that the primary purpose of the second and third urinalyses was not to obtain evidence for courts-martial, given the wing commander’s sworn statements. The military judge further reasoned that an otherwise valid inspection does not become an illegal search simply because a commander consults with a legal officer or uncovers incriminating evidence.
B.
We have in the past held that “the military judge’s finding regarding the ‘primary purpose’ is a matter of fact, the issue of whether the examination is an inspection is a matter of law that this Court will review de novo.” United States v. Gardner, 41 M.J. 189, 191 (C.M.A.1994); accord United States v. Shover, 45 M.J. 119, 122 (C.A.A.F.1996).[2] “Purpose and intent ... are themselves classic questions of fact.” United States v. McCarthy, 47 M.J. 162, 165 (C.A.A.F.1997). Although the commander’s stated purpose of conducting an examination is not dispositive of the issue, the “primary purpose” of an examination is solely dependent upon the intent of the person who ordered the examination. This is a question of historical fact for the military judge to determine and which we review for clear error. Shover, 45 M.J. at 122; cf. McCarthy, 47 M.J. at 165 (reviewing for clear error whether brig officials had an intent to punish); United States v. Curtis, 33 M.J. 101, 105 (C.M.A.1991) (reviewing for clear error the military judge’s ruling as to discriminatory intent of trial counsel in exercising a peremptory challenge).[3]
*66 IV.
In this case, the military judge had three pieces of evidence before him relating to the purpose of the re-examinations: (1) the SJA’s legal memorandum to the wing commander focusing on the benefits of additional urinalyses in obtaining convictions;' (2) the wing commander’s subsequent policy memorandum to his commanders and first sergeants stating military purposes; and (3) the wing commander’s affidavit reiterating those military purposes.
While the SJA’s memorandum is strong evidence of his intent in recommending the retesting policy be implemented, our focus is on the commander’s purpose in ordering the examination, and we do not attribute to the commander “every instance of advice or expression of opinion by an SJA.” United States v. Hamilton, 41 M.J. 32, 37 (C.M.A.1994).
The wing commander initially stated that his purpose in ordering the re-examinations was to ensure “security, military fitness, and good order and discipline,” and he subsequently reaffirmed that purpose in his affidavit. That comports with M.R.E. 313(b)’s definition of an inspection: “an examination ... conducted as an incident of command the primary purpose of which is to determine and to ensure the security, military fitness, or good order and discipline of the unit.” Appellant offered no objection to the admission of the wing commander’s affidavit. If Appellant had desired to further test the purpose of the policy, he could have sought to depose the wing commander or demand his presence at trial so he would be subject to cross-examination. Appellant did not do so, and did not present any other evidence showing that the examination’s purpose was other than the one announced by the wing commander.
As such, the military judge’s finding that the Government had proved by “clear and convincing” evidence that the examination was conducted “to ensure the security, military fitness and good order and discipline of the 355th Wing” was not clearly erroneous. That being the case, the military judge did not err in finding that Appellant’s additional urinalyses were conducted for a permissible purpose.
V.
The judgment of the United States Ar Force Court of Criminal Appeals is affirmed.

. As the Government agreed at trial that it had to prove by clear and convincing evidence that the examination was an inspection, we need not determine whether that is the appropriate standard in this case.

. More recently, we suggested that the "primary purpose” of an examination might be a mixed question of fact and law. United States v. Jackson, 48 M.J. 292, 295 (C.A.A.F.1998) (citation and quotation marks omitted).

.The Supreme Court has held that questions of intent or purpose are still questions of fact reviewable for clear error, even if the result in a case turns on the factual finding. See Pullman-Standard v. Swint, 456 U.S. 273, 286 & n. 16, 287-88, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (civil context; Fed.R.Civ.P. 52(a)); Maine v. Taylor, 477 U.S. 131, 145, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986) (criminal context) ("[T]he considerations underlying Rule 52(a) — -the demands of judicial efficiency, the expertise devel *66 oped by trial judges, and the importance of firsthand observation — all apply with full force in the criminal context.... Accordingly, the 'clearly erroneous’ standard of review long has been applied to nonguilt findings of fact by district courts in criminal cases.”) (citation omitted); see also Lynch v. City of New York, 589 F.3d 94, 105 (2d Cir.2009) (primary purpose of breathalyzer policy); United States v. Green, 293 F.3d 855, 859 (5th Cir.2002) (primary purpose of checkpoint); United States v. Davis, 270 F.3d 977, 980 (D.C.Cir.2001) (same).