# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**M.D. MODZELEWSKI, R.Q. WARD, E.C. PRICE**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**WARREN J. WHITE**
**MISSILE TECHNICIAN FIRST CLASS (E-6), U.S. NAVY**

**NMCCA 201300115**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 13 December 2012.
**Military Judge:** CAPT John Waits, JAGC, USN.
**Convening Authority:** Commander, Navy Region Southeast,
Jacksonville, FL.
**Staff Judge Advocate's Recommendation:** CDR M.C. Holifield,
JAGC, USN.
**For Appellant:** LT Carrie Theis, JAGC, USN.
**For Appellee:** LCDR Keith Lofland, JAGC, USN.

**31 January 2014**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PRICE, Judge[1]:

A military judge, sitting as a general court-martial, convicted the appellant in accordance with his pleas of three specifications of service discrediting behavior in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The military judge sentenced the appellant to confinement for 14

---
[1] Judge Price participated in the decision of this case prior to detaching from the court.

years, total forfeitures, reduction to pay grade E-1, and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged and, pursuant to a pretrial agreement, suspended all confinement in excess of 48 months.

The appellant raises three assignments of error: (1) that the military judge erred when he used a Florida statute to determine the maximum punishment for a violation of Clause 2 of Article 134; (2) that the military judge erred by not awarding credit for illegal pretrial punishment in violation of Article 13, UCMJ; and (3) that the Naval Air Station Jacksonville Pretrial Confinement Facility (PCF) policy regarding written profanity violated his First Amendment rights and led to the introduction of damaging evidence.

After careful consideration of the record and the briefs of the parties, including pleadings responsive to the issue specified by this court,[2] we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## I. Background

The appellant pled guilty to three specifications of committing acts prohibited under Florida law in violation of Clause 2 of Article 134. All three specifications related to his response to an online ad for prostitution, which had been placed as part of a law enforcement "sting" operation. When the appellant responded to the ad, he unwittingly began a correspondence with a police detective, who told him that the only girl available for sex that night was his "14 year-old niece."

Over the course of approximately five hours, the appellant sent approximately 59 texts and made three phone calls to the detective, who held himself out to be the guardian of the child. During these communications, the appellant initially agreed to pay $40.00 in exchange for sex with the "niece" that night and then offered to pay "$1,500" to purchase the niece to participate in sexual conduct with others in the future. This

---

[2] We directed the Government to file a brief and afforded the appellant an opportunity to file a reply in response to the following question: "With respect to Specifications 1-3 of the Charge, which allege violations of Article 134, under clause 2, assuming that the military judge erred by using 'the analogous Florida statutes in determining the maximum punishment applicable to appellant's offenses,' what was the authorized maximum punishment for each specification under the charge based upon R.C.M. 1003(c)(1)?" Order of 2 Dec 2013 (footnote omitted).

2

solicitation of the detective to transfer control of a minor for prostitution purposes and the use of a cell phone to do so were the basis for Specifications 1 and 3 of the Charge, to which the appellant pled guilty at trial.

The appellant also drove his car for several hours to reach the address where the Detective indicated that he and his "14 year-old niece" were located, at which point the appellant was arrested by Florida law enforcement authorities.  At trial, he pled guilty to "travel for the purpose of engaging in unlawful sexual conduct with a person he believed to be a child after using a computer online service and . . . cellular phone, to solicit and entice [the Detective], a person believed to be a custodian or guardian of a child to consent to the participation of the child in sexual conduct, as prohibited by Florida Statutes section 847.0135(4)(b), which conduct was of a nature to bring discredit upon the armed forces."  Specification 2 of the Charge.

Additional facts necessary to resolve the assigned errors are included herein.

## II. Maximum Punishment

The appellant argues that the military judge erred in determining the authorized maximum punishment for Specification 2 of the Charge by incorrectly applying the maximum punishment of a Florida statute.[3]  He contends that the maximum punishment

---

[3] Initially, the appellant's assigned error was limited to the military judge's application of Florida law to determine the maximum punishment for Specification 2 of the Charge.  Appellant's Brief of 7 Jun 2013 at 11.  However, in response to the issue specified by this court, he now asserts that Specifications 1 and 3 of the Charge are novel specifications punishable as general disorders with maximum confinement of four months for each specification.  Appellant's Reply of 14 Jan 2014 at 4-11 (citing *United States v. Beaty*, 70 M.J. 39, 45 (C.A.A.F. 2011)).  At trial, the military judge initially determined the maximum confinement for Specification 1 of the Charge as 15 years and Specification 3 as 5 years, "based upon Florida Statutes."  Record at 90.  However, after the Government conceded that the Manual limited confinement in solicitation offenses to 5 years, the military judge informed the appellant that the maximum confinement "would be 5 years for Specification 1." *Id*. at 93.  Prior to arguing on sentence, the trial defense counsel asserted that Specifications 1 and 3 of the Charge constituted an unreasonable multiplication of charges for sentencing. *Id*. at 266-67.  The military judge agreed and merged those specifications for sentencing. *Id*. at 273-75.  He also recalculated the maximum confinement as 20 years – 5 years confinement for the merged Specifications 1 and 3, and 15 years confinement for Specification 2 of the Charge. *Id*. at 275.  We conclude that the maximum punishment for Specification 1 includes at least five years confinement, as the charged offense is closely related to an offense listed in Part IV of the Manual – Soliciting another to commit

3

for that offense included only four months confinement and no punitive discharge.  The Government responds that the military judge appropriately determined that the maximum punishment included 15 years confinement and a dishonorable discharge "by referencing analogous offenses under Florida law."  Government Answer of 7 Aug 2013 at 10.  In response to the issue specified by this court, the Government argues that even assuming that the military judge erred by referencing Florida law, the charged conduct was closely-related to an attempt to commit abusive sexual contact with a child under Article 120(i), UCMJ (2006), and that application of RULE FOR COURTS-MARTIAL 1003(c)(1)(B)(i), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) results in the same maximum punishment as was determined by the military judge.  Government Answer to Specified Issue of 16 Dec 2013 at 12-13.  The appellant replies that Specifications 1-3 of the Charge are novel specifications each punishable as a general disorder with maximum authorized confinement of four months for each specification.  Appellant's Reply of 14 Jan 2014 at 4-11 (citing *United States v. Beaty*, 70 M.J. 39, 45 (C.A.A.F. 2011)).

"The maximum punishment authorized for an offense is a question of law, which we review *de novo*."  *United States v. Beaty*, 70 M.J. 39, 41 (C.A.A.F. 2011) (citations omitted).  "While we review a military judge's sentencing determination under an abuse of discretion standard . . . where a military judge's decision was influenced by an erroneous view of the law, that decision constitutes an abuse of discretion."  *Id*. (citations omitted).

Consistent with the authority delegated by Congress in Article 56, UCMJ, the President established offense-based limits on punishments dependent upon whether the offenses are "listed" or "not listed" in Part IV of the Manual.  R.C.M. 1003(c)(1).  For offenses "not listed in Part IV" of the Manual, the President established a process for determining offense-based limits on punishment dependent upon whether the charged offense: (1) is closely related to or necessarily included in an offense listed in Part IV of the Manual, and, if not, then (2) whether

---

Pandering under Article 134.  *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶¶ 97 and 105; RULE FOR COURTS-MARTIAL 1003(c(1)(B)(i), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).  As we conclude the maximum confinement for Specification 1 was at least 5 years, and the military judge calculated the same 5 years for the merged Specifications 1 and 3, we need not further address Specification 3.  For the reasons set forth in the Discussion section of Part II of this opinion, we also conclude that the military judge's erroneous methodology in determining the maximum punishment did not prejudice the appellant.

4

the charged offense is punishable as authorized by the United States Code or as authorized by custom of the service.  R.C.M. 1003(c)(1)(B).

## Discussion

As a preliminary matter, we agree with the appellant's contention that the military judge erred in determining the maximum punishment for Specification 2 of the Charge by reference to the maximum punishment of a Florida statute.  "Acts in violation of [state law] may be punished [under clause 2 of Article 134] if they are of a nature to bring discredit upon the armed forces."  MCM, Part IV, ¶ 60c(3).  However, we find no authority to determine the maximum punishment for a novel offense alleged under Clause 2 of Article 134 by reference to state law.[4]  *See generally* Art. 56, UCMJ; R.C.M. 1003(c)(1).  We therefore conclude that the military judge's determination that the maximum punishment for Specification 2 of the Charge was "based upon Florida Statutes" to be an erroneous view of the law, and thus an abuse of discretion.  Record at 90; *Beaty*, 70 M.J. at 41.

In order to determine whether the military judge's error resulted in prejudice to the appellant, we must first determine the maximum punishment for this offense.  After application of R.C.M. 1003(c)(1)(B)(i)-(ii), and for the reasons discussed below, we conclude that the maximum punishment for the offense alleged in Specification 2 of the Charge includes a dishonorable discharge and at least 15 years confinement.

We note that the military judge defined the elements and key definitions of Specification 2 of the Charge, including the definition of "sexual conduct," in accordance with Florida

---

[4] Although inapplicable here, ". . . when State law becomes Federal law of local application under . . . the Federal Assimilative Crimes Act [FACA]. . ." and is alleged under clause 3 of Article 134, the authorized maximum punishment is "subject to a like punishment [of the assimilated state law]."  MCM, Part IV, ¶ 60c(4)(a) and (c)(ii).  Again inapplicable here, the FACA "is an adoption by Congress of state criminal laws for areas of exclusive or concurrent federal jurisdiction, provided federal criminal law, including the UCMJ, has not defined an applicable offense for the misconduct committed."  *Id*. at ¶ 60c(4))(c)(ii).  As the military judge explained to the appellant, "[t]here is a way that under Clause 3 [of Article 134] that the government, the military can actually assimilate state law into a Specification under Article 134.  *That is not what has happened in this case*, so in this case the government is basically using Florida Statutes as kind of a framework for the allegations that they're making against you, and they're saying that based on the fact that you have effectively violated all of the elements of these Florida Statutes that your conduct has brought discredit upon the Armed Forces."  Record at 101 (emphasis added).

5

Statute § 847.0135(4)(b) and Clause 2 of Article 134. Record at 105; Appellate Exhibit IX. We also note that the military judge defined "unlawful sexual conduct" as meaning "actual or simulated sexual intercourse, deviant sexual intercourse, sexual bestiality, masturbation or sadomasochistic abuse, actual lewd exhibition of the genitals, actual physical contact with a persons clothed or unclothed genitals, pubic area, buttocks or if such person is a female, breasts, with the intent to arouse or gratify the sexual desire of either party, or any act or conduct which constitutes sexual battery or simulates that sexual battery is being or will be committed." *Id.* at 106; *see also In re Std. Jury Instructions in Crim. Cases*, 6 So. 3d 574, 585-86 (Fla. 2009). This definition incorporates conduct then defined as a "sexual act" and as "sexual contact" in the UCMJ. *See* Arts. 120(t)(1) and (t)(2), UCMJ (2006).[5]

We find the offense alleged in Specification 2 of the Charge closely related to two separate attempt offenses under Article 80 and listed in Part IV of the Manual for misconduct committed during the period 1 October 2007 through 27 June 2012. Those closely related attempt offenses include aggravated sexual assault of a child (Article 120(d), UCMJ (2006)), punishable by 20 years confinement, and abusive sexual contact with a child (Article 120(i), UCMJ (2006)), punishable by 15 years confinement.

We will review these two attempts in the aggregate and have inserted language from the specification into the elements provided by the Manual to aid discussion. An attempt under Article 80, UCMJ, requires:

(1) That the accused did a certain overt act ["travel for the purpose of engaging in unlawful sexual conduct with a person he believed to be a child after using a computer online service and . . . cellular phone, to solicit and entice [the Detective], a person believed to be a custodian or guardian of a child to consent to the participation of the child in sexual conduct, as prohibited by Florida Statutes section 847.0135(4)(b), which conduct was of a nature to bring discredit upon the armed forces"];

(2) That the act was done with specific intent to commit a certain offense under the Code [aggravated sexual assault of a child, or abusive sexual contact with a child];

---

[5] The appellant stipulated that "sexual conduct" included the act of sexual intercourse. Prosecution Exhibit 5 at 6-7.

(3)    That the act amounted to more than mere preparation; and

(4)    That the act apparently tended to effect the commission of the intended offense [aggravated sexual assault of a child, or abusive sexual contact with a child].

MCM, Part IV, ¶ 4b.[6]

At the time of the appellant's conduct, the elements of aggravated sexual assault of a child who had attained the age of 12 years but not attained the age of 16 years were: (1) That the accused engaged in a sexual act with a child, and (2) That at the time of the sexual act, the child had attained the age of 12 years but had not attained the age of 16 years. MCM, App. 28, ¶ 45b(4). Sexual act was defined as "contact between the penis and the vulva, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight; or (B) the penetration, however slight, of the genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, or degrade any person or to arouse or gratify the sexual desire of any person." Art. 120(t)(1), UCMJ (2006).

The relevant elements of abusive sexual contact with a child were: (1) that the accused engaged in sexual contact with a child; and, (2) that at the time of the sexual contact the child had attained the age of 12 but had not attained the age of 16. MCM, App. 28, ¶ 45b(9). Sexual contact was defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of another person . . . . with an intent to abuse, humiliate, or degrade any person or to arouse or gratify the sexual desire of any person." Art. 120(t)(2), UCMJ (2006).

The verbiage of Specification 2 of the Charge, the elements of this offense as stipulated to by the appellant, and the elements as explained by the military judge demonstrate that this offense was closely related to two separate attempt offenses listed in Part IV of the Manual. The maximum punishment for "the least severe of the listed offenses" –

_____

[6] Although the child's age was not specified in any of the three specifications of the charge, we note that the Florida statute's definition of a minor, less than 18 years old, is greater than the 16 years of age required to be punishable under the identified military offenses. However, we find this distinction of no import in this case, as the appellant stipulated that he believed the child subject of Specifications 1-3 of the Charge to be 14 years old. PE 5 at 3, 6.

"abusive sexual contact with a child" – includes 15 years confinement and a dishonorable discharge, the same maximum punishment the military judge deemed authorized for this offense. R.C.M. 1003(c)(1)(B)(i).

Assuming *arguendo* that the charged offense is not closely-related to any offense listed in Part IV of the Manual, we conclude that the conduct is proscribed by a directly analogous federal statute under 18 U.S.C. 2422(b) which states, in pertinent part:

> Whoever, using . . . any facility or means of interstate . . . commerce, . . . knowingly persuades, induces, entices . . . any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be . . . imprisoned not less than 10 years or for life.

"To establish an attempt under [18 U.S.C.] § 2422(b), . . . the Government must prove that an accused: (1) had the intent to commit the substantive offense; and (2) took a substantial step toward persuading, inducing, enticing or coercing a minor to engage in illegal sexual activity." *United States v. Schell*, 72 M.J. 339, 344 (C.A.A.F. 2013); *see also id.* n.2 (citing *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004) (additional citations omitted)). Here the specification addresses the appellant's intent to commit the offense through travel across Florida after using a computer online service and cell phone to solicit and entice the person he believed to be the custodian or guardian of a child to consent to that child's participation in unlawful sexual conduct.

As in *Murrell*, the alleged misconduct here includes extended travel after soliciting and enticing the believed guardian of the child to consent to that child's participation in unlawful sexual conduct. Also as in *Murrell*, that misconduct constituted a substantial step toward enticing the child to engage in unlawful sexual activity. *Id.* at 1288 (Murrell's objective acts, which included two hours of travel to another county to meet a minor girl for sex in exchange for money, and possession of a teddy bear, $300.00 in cash, and a box of condoms when he arrived at the meeting site, "demonstrate unequivocally that he intended to influence a young girl into engaging in unlawful sexual activity and [constitute] a substantial step toward inducing a minor to engage in illicit sexual acts, thereby satisfying the second element of criminal attempt").

8

In addition, the appellant's use of a "computer online service" and "cellular phone" satisfy the "interstate commerce" requirement of § 2422(b). *See United States v. Daniels,* 685 F.3d 1237, 1246 (11th Cir. 2012) ("use of a cellular phone is interstate commerce" (citing *United States v. Evans*, 476 F.3d 1176, 1180-81 (11th Cir. 2007)), *cert. denied*, 133 S. Ct. 1240 (2013); *United States v. Hornaday*, 392 F.3d 1306, 1310-11 (11th Cir. 2004) ("the internet is an instrumentality of interstate commerce [and] Congress clearly has the power to regulate the internet . . . and to prohibit its use for harmful or immoral purposes regardless of whether those purposes would have a primarily intrastate impact" (citations omitted)).

Moreover, and as occurred in this case, an attempted enticement is punishable where one attempts to induce a minor through an intermediary who appeared to the defendant to exercise some degree of control over that minor, even if no child exists. *See United States v. Farley*, 607 F.3d 1294, 1325 (11th Cir. 2010) (holding that attempted enticement under 18 U.S.C. § 2422(b) does not require the existence of an actual child victim and those caught in "sting" operations and charged under § 2422(b) are subject to the same convictions and penalties as those who succeed in their crimes).

Such conduct is punishable by a maximum of life imprisonment, well in excess of the 15 years confinement the military judge determined to be the maximum authorized punishment for Specification 2 of the charge.

Accordingly, we conclude that the maximum punishment for the offense alleged in Specification 2 of the Charge includes a dishonorable discharge and at least 15 years confinement. Because the maximum punishment determined by the military judge is less than or equal to the maximum punishment authorized through proper application of R.C.M. 1003(c)(1), we conclude that the military judge's erroneous methodology in determining the maximum punishment did not prejudice the appellant.

### III. Pretrial Punishment

The appellant argues that the military judge erred by denying him credit for illegal pretrial punishment in violation of Article 13, UCMJ. In support of his argument, he contends that "the [Jacksonville] Brig knowingly treated him the same as post-trial prisoners by calling him 'prisoner White' instead of 'pre-trial prisoner White,' by acting with indifference regarding the command's failure to get him a uniform for six

9

weeks, and by having him perform work with post-trial prisoners."  Appellant's Brief at 7-8.

Article 13 prohibits: (1) the intentional imposition of punishment on an accused before his guilt is established at trial, i.e., illegal pretrial punishment, and (2) arrest or pretrial confinement conditions that are more rigorous than necessary to ensure the accused's presence at trial or to prevent additional misconduct, i.e., illegal pretrial confinement.  *See United States v. Mack*, 65 M.J. 108, 110 (C.A.A.F. 2007); *United States v. Inong*, 58 M.J. 460, 463 (C.A.A.F. 2003).  The "punishment prong" of Article 13 focuses on intent, while the "rigorous circumstances" prong focuses on the conditions of the pretrial restraint.  *United States v. Pryor*, 57 M.J. 821, 825 (N.M.Ct.Crim.App. 2003) (citing *United States v. McCarthy*, 47 M.J. 162, 165 (C.A.A.F. 1997)).  "[A]bsent a showing of an **expressed intent** to punish, a particular condition reasonably related to a legitimate and non-punitive governmental objective, does not, without more, amount to punishment."  *Id.* (citing *Bell v. Wolfish,* 441 U.S. 520, 538-39 (1979)).

Whether the conditions of the appellant's pretrial confinement constituted unlawful pretrial punishment is a mixed question of law and fact.  *Id.*  The burden of proof is on the appellant to show a violation of Article 13.  *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002).  A military judge's factual finding that there was no intent to punish is reviewed under a clearly erroneous standard of review.  *United States v. Smith*, 53 M.J. 168, 170 (C.A.A.F. 2000).  But we review *de novo* the military judge's conclusion that the appellant was not entitled to any relief under Article 13, UCMJ.  *Mosby*, 56 M.J. at 310.

The military judge adopted as his own, the statement of facts from the Government's response to the Defense Motion for Pretrial Confinement Credit.  Record at 203-04; AE XII.  He also found additional facts and concluded that the appellant failed to meet his burden to show that the facts and conditions of confinement "constituted an intent to punish or that the conditions of detention were unduly rigorous."  Record at 204.

Based on our review of the record, we conclude that the military judge did not err in denying the appellant relief.

### IV. First Amendment and Prosecution Exhibit 1

The appellant argues that "[t]he [Jacksonville PCF's] blanket policy of classifying as contraband 'curse words'

10

written in a private journal violates [his] *First Amendment* rights" and led to the subsequent "introduction of dramatically damaging evidence against him" at trial. Appellant's Brief at 22. While in pretrial confinement, the appellant made entries in a journal that included multiple references to sexual conduct with minor females. The Jacksonville PCF had a policy prohibiting possession of written materials that included lewd words and curse words. The appellant's journal was confiscated as contraband and several entries were introduced in the Government's case in aggravation, over defense objection. Prosecution Exhibit 1; Record at 226-31. The appellant avers that the policy and the seizure of his journal violated his First Amendment rights, and asserts that the court should only approve 30 months of confinement to cure the effect of this violation. Appellant's Brief at 25. We disagree.

We review a military judge's admission of evidence, including sentencing evidence admitted in aggravation under R.C.M. 1001(b)(4), for "an abuse of discretion." *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citation omitted). The Court of Appeals for the Armed Forces has found "state-of-mind/depth-of-problem evidence . . . directly related to the charged offenses" admissible in aggravation. *United States v. Ciulla*, 32 M.J. 186, 187 (C.M.A. 1991) (citations omitted). "Of course, a rule or other provision of the *Manual for Courts-Martial* cannot sanction a violation of Appellant's constitutional rights." *Stephens*, 67 M.J. at 235 (citation omitted).

Although the Jacksonville PCF's policy prohibiting possession of lewd and profane material, which is not clearly defined in the record, could implicate the First Amendment and raise some question as to whether that policy is "'reasonably related to legitimate penological interests,'" *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)), we need not resolve those broad potential issues here.[7] We conclude that PCF prohibitions on possession of writings, such as the appellant's, which include explicit descriptions of sexual conduct with prepubescent girls are "reasonably related to legitimate penological interests." *Id*.

We also conclude that the military judge did not abuse his discretion when, after citing *Ciulla*, he found Prosecution Exhibit 1 to be "depth of problem evidence and admissible under

_____

[7] Nor do we address the question of whether violation of a pretrial prisoner's First Amendment rights could provide a basis to exclude evidence otherwise lawfully seized under the Fourth and Fifth Amendments to the Constitution.

11

RCM 1001(b)(4)." Record at 246. We agree that the journal entries reveal the depth of the appellant's interest in sexual conduct with girls based upon their age and sexual inexperience and is proper sentencing evidence in this case. *See United States v. George*, 52 M.J. 259, 261 (C.A.A.F. 2000) (evidence of the depth of an accused's sexual problems is proper presentencing evidence when the accused was convicted of communicating indecent language to a 17-year-old girl). Because this was a trial by military judge alone, the potential for unfair prejudice was substantially less than it would be in a trial with members. We are satisfied that the military judge was able to sort through the evidence, weigh it, and give it the appropriate weight. *See United States v. Cacy*, 43 M.J. 214, 218 (C.A.A.F. 1995).

## Conclusion

Accordingly, the findings and the sentence, as approved by the CA, are affirmed.

Chief Judge MODZELEWSKI and Senior Judge WARD concur.

For the Court

R.H. TROIDL
Clerk of Court

12